UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHAHROKH MIRESKANDARI,

        Plaintiff,

   vs.

DAILY MAIL AND GENERAL TRUST
PLC; ASSOCIATED NEWSPAPER
LTD.; NATIONAL STUDENT
CLEARING HOUSE; DAVID
GARDNER; and DOES 1 through 10,
inclusive,

        Defendants.

CASE NO. CV 12-02943 MMM (FFMx)

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION FOR ATTORNEYS' FEES

    Defendants Associated Newspapers Ltd. and David Gardner filed a motion for attorneys' fees pursuant to California Code of Civil Procedure § 425.16(c) on August 22, 2014.[1]  Plaintiff Shahrokh Mireskandari opposes the motion.[2]

---

    [1]Motion of Defendants Associated Newspapers Ltd. and David Gardner to Recover Attorneys' Fees ("Motion"), Docket No. 204 (Aug. 22, 2014).

    [2]Plaintiff's Opposition to Defendants' Motion for Attorneys' Fees ("Opposition"), Docket No. 210 (Oct. 20, 2014).

# I.  PROCEDURAL BACKGROUND

On April 4, 2012, plaintiff Shahrokh Mireskandari filed this action against the Daily Mail, Associated Newspaper Ltd. ("ANL"), National Student Clearing House ("NSC"), David Gardner, and ten fictitious defendants, alleging that defendants had illegally gathered his personal information and engaged in a smear campaign by publishing derogatory articles about him.[3] Plaintiff filed a first amended complaint on May 23, 2012, alleging claims for violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*; breach of contract; intrusion upon seclusion; public disclosure of private facts; false light; violation of Article 1, § 1 of the California Constitution; tortious interference with contract; tortious interference with prospective economic advantage; violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030; breach of confidentiality; violation of the California Computer Crime Law ("CCCL"), California Penal Code § 502; violation of the California Invasion of Privacy Act, California Penal Code § 630; intentional infliction of emotional distress; and declaratory relief.[4]

On June 25, 2012, ANL and Gardner (collectively "defendants") filed a motion to strike portions of the first amended complaint under Rule 12(f) of the Federal Rules of Civil Procedure ("Rule 12 motion").[5]  They also filed a special motion to strike portions of the first amended complaint pursuant to California's anti-Strategic Lawsuits Against Public Participation statute, California Code of Civil Procedure § 425.16 ("anti-SLAPP motion").[6]  Defendant Daily Mail and General Trust PLC ("DMGT") filed a motion to dismiss for lack of personal jurisdiction.[7]  On

---

[3]Complaint, Docket No. 1 (Apr. 4, 2012).

[4]First Amended Complaint, Docket No. 15 (May 23, 2012).

[5]Motion to Strike Plaintiff's First Amended Complaint, Docket No. 25 (June 25, 2012).

[6]Special Motion to Strike Plaintiff's First Amended Complaint Against Defendants Associated Newspapers Ltd. and David Gardner, Docket No. 26 (June 25, 2012).

[7]Motion to Dismiss, Docket No. 27 (June 25, 2012).

2

June 27, 2012, defendants filed amended versions of the Rule 12 and anti-SLAPP motions.[8]  On July 31, 2013, the court issued an order granting in part and denying in part defendants' Rule 12 motion.[9]  Also on July 31, 2013, the court granted DMGT's motion to dismiss for lack for personal jurisdiction.[10]

On October 8, 2013, the court issued an order granting in part and denying in part defendants' anti-SLAPP motion, striking Mireskandari's seventh and eighth claims with prejudice, and striking his first, second, third, fourth, sixth, tenth, eleventh, twelfth, and thirteenth causes of action with leave to amend.[11]  On October 25, 2013, defendants appealed those portions of the order that denied their special motion to strike the fifth and fourteenth causes of action,[12] and concurrently filed an *ex parte* application for an order staying discovery.[13]

On November 7, 2013, Mireskandari filed a second amended complaint, alleging claims for civil conspiracy (UK law), breach of confidence (UK law), causing loss by unlawful means (UK law), false light invasion of privacy, invasion of privacy: intrusion upon seclusion, breach of contract, violation of the CFAA, violation of the CCCL, inducing breach of confidence (UK law), and violation of the UCL.[14]  On December 1, 2013, the court issued an order that deferred

---

[8]Amended Special Motion to Strike Plaintiff's First Amended Complaint Against Defendants Associated Newspapers Ltd. and David Gardner ("Special MTS"), Docket No. 42 (June 27, 2012); Amended Motion of Defendant Associated Newspapers Ltd and David Gardner to Strike Portions of Plaintiff's First Amended Complaint [Rule 12(f)] ("MTS"), Docket No. 40 (June 27, 2012).  Subsequent references to the motions to strike are to the amended versions.

[9]Order Granting in Part and Denying in Part Defendants' Motion to Strike, Docket No. 153 (July 31, 2013) at 14-15.

[10]Order Granting Defendants' Motion to Dismiss, Docket No. 151 (July 31, 2013).

[11]Order Granting in Part and Denying in Part Special Motion to Strike Plaintiff's First Amended Complaint ("SLAPP Order"), Docket No. 160 (Oct. 8, 2013) at 61.

[12]Notice of Appeal ("Appeal"), Docket No. 162 (Oct. 25, 2013).

[13]*Ex Parte* Application, Docket No. 163 (Oct. 25, 2013).

[14]Second Amended Complaint ("SAC"), Docket No. 167 (Nov. 7, 2013).  The second amended complaint does not name NSC as a defendant and states that Mireskandari and NSC

ruling on defendants' *ex parte* application until the deadline for the filing of a responsive pleading to Mireskandari's second amended complaint had passed.[15] The court noted that Mireskandari's second amended complaint included claims he was not given leave to plead, and that the newly pled claims were subject to a motion to strike.[16]

On December 10, 2013, defendants filed a second Rule 12(f) motion, a second anti-SLAPP motion, and a second motion to dismiss.[17] The Rule 12(f) motion sought to strike the new claims pled under UK law, and various allegations defendants argued the court had previously stricken in its July 31, 2013 order; they asserted that Mireskandari had not been given leave to plead the claims and allegations that were the subject of the motion.[18]

On February 14, 2014, Mireskandari filed a voluntary dismissal of the action without prejudice under Rule 41(a) of the Federal Rules of Civil Procedure.[19] Mireskandari stated that he was dismissing the action because his sole federal claim, for violation of the CFAA, might be barred by the statute of limitations; he noted that he would refile the state law claims in state court.[20] Mireskandari contended that his dismissal left the court without jurisdiction to decide

---

agreed to settlement terms. (*Id.* at 2 n. 1.)

[15]Order Denying Defendants' *Ex Parte* Application, Docket No. 168 (Dec. 1, 2013) at 3.

[16]*Id.* at 3 n. 13.

[17]Motion to Strike Portions of Plaintiff's Second Amended Complaint; Request for Sanctions Against Plaintiff and His Counsel of Record ("2d MTS"), Docket No. 169 (Dec. 10, 2013); Special Motion to Strike Plaintiff's Second Amended Complaint ("2d Special MTS"), Docket No. 170 (Dec. 10, 2013); Motion to Dismiss, Docket No. 171 (Dec. 10, 2013).

[18]2d MTS at 1.

[19]Notice of Voluntary Dismissal, Docket No. 180 (Feb. 14, 2014).

[20]Opposition to Defendants' Special Motion to Strike and Motion to Dismiss, Docket No. 181 (Feb. 14, 2014) at 1; Declaration of Louis R. Miller ("Miller Decl."), Docket No. 181-1 (Feb. 14, 2014), ¶¶ 3-4, 6. See also Opposition to Motion to Strike, Docket No. 182 (Feb. 14, 2014).

defendants' pending motions, which had become moot.[21]  On February 24, 2014, defendants filed reply briefs in support of their second anti-SLAPP motion and second Rule 12(f) motion, asserting that the court's jurisdiction to rule on the anti-SLAPP motion and request for sanctions was not affected by Mireskandari's dismissal of the case.[22]  On March 14, 2014, Mireskandari filed an action against defendants in state court alleging claims for invasion of privacy (intrusion into private affairs), false light invasion of privacy, and violation of the CCCL.[23]

On August 4, 2014, the court issued an order granting defendants' second anti-SLAPP motion as to Mireskandari's breach of contract and UCL claims.[24]  In its order, the court concluded that defendants were the "prevailing party" on those claims within the meaning of California's anti-SLAPP statute and thus were entitled to an award of fees related to their efforts to have the claims dismissed.[25]  Defendants filed a motion for attorneys' fees under California Code of Civil Procedure § 425.16(c) on August 22, 2014, which seeks to recover all fees incurred

---

[21]Opposition to Defendants' Special Motion to Strike and Motion to Dismiss, Docket No. 181 (Feb. 14, 2014) at 1.

[22]Reply in Support of Special Motion to Strike ("2d Special MTS Reply"), Docket No. 183 (Feb. 24, 2014);2d MTS Reply.

[23]The court takes judicial notice of the state court complaint.  (See Declaration of Kelli L. Sager, Docket No. 192 (Apr. 22, 2014), Exh. A ("State Court Complaint").  Under Rule 201, the court can take judicial notice of court filings and orders in related litigation such as Mireskandari's state court action.  See *Reyn's Pasta Bella, LLC v. Visa USA, Inc*. 442 F.3d 741, 746 n. 6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289, 290 n. 1 (9th Cir. 1996) (court may take judicial notice of the pleadings and court orders in related proceedings); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (a court may take judicial notice "of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *Burnham v. Ruan Transp.*, No. SACV 12–0688 AG (ANx), 2013 WL 4564496, *2 (C.D. Cal. Aug. 16, 2013) ("[C]ourts may take judicial notice of pleadings and court orders that are matters of public record").

[24]Order Granting Defendants' Motion to Strike and Granting Defendants' Request for Sanctions ("Second SLAPP Order"), Docket No. 201 (Aug. 4, 2014).

[25]*Id.* at 21.

in preparing and prosecuting their two anti-SLAPP motions.[26]  Mireskandari opposed the motion on October 20, 2014.[27]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter appropriate for decision without oral argument.  The hearing calendared for November 10, 2014, is therefore vacated, and the matter is taken off calendar.

## II.  DISCUSSION

**A.**    **Legal Standard Governing Award of Attorneys' Fees Under California's Anti-SLAPP Statute**

Under Code of Civil Procedure § 425.16(c)(1), "a prevailing party on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  CAL. CODE CIV. PROC. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001) ("[U]nder Code of Civil Procedure section 425.16, subdivision (c), any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees"); *Christian Research Institute v. Alnor*, 165 Cal.App.4th 1315, 1321 (2008) ("Because the Legislature specified the prevailing defendant 'shall be entitled to recover his or her attorney's fees and costs,' an award is usually mandatory" (citation omitted)); see also *Verizon Delaware, Inc. v. Covad Communications Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail"); *Bernardo v. Planned Parenthood Fed. of America*, 115 Cal.App.4th 322, 360-67 (2004) (explaining the policy behind the mandatory fees and costs provision of the anti-SLAPP statute).

Although attorneys' fees to a prevailing party are usually mandatory, the California Supreme Court has held that, in considering a fee request under §425.16(c), a trial court "has broad discretion to adjust the fee downward or deny an unreasonable fee altogether." *Ketchum*, 24 Cal.4th at 1137-38; see *id.* at 1138 ("To the extent a trial court is concerned that a particular

---

[26]See Motion.

[27]See Opposition.

6

award is excessive, it had broad discretion to adjust the fee downward or deny an unreasonable fee altogether"); *Alnor*, 165 Cal.App.4th at 1329-30 ("*Alnor* contends a significantly higher award, of some unspecified amount, was necessary to serve the interests of the anti-SLAPP statute. But counsel may not leverage the statute to obtain an 'unjust' award. *Serrano v. Unruh*, 32 Cal.3d 621, 635 (1982). As our Supreme Court observed in *Ketchum*, '[a] fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' *Ketchum*, 24 Cal.4th at 1137. The trial court could reasonably conclude the inflated, noncredible, often vaguely documented hours claimed by counsel precluded turning Alnor's contingent fee arrangement with counsel into a windfall. . . . The trial court's attorney fee award is affirmed").[28]

---

[28]In their reply, defendants contend that fees under § 425.16(c) are mandatory in all circumstances where a party prevails on an anti-SLAPP motion. (Reply in Support of Motion to Recover Attorneys' Fees ("Reply"), Docket No. 211 (Oct. 27, 2014) at 12 n. 6.) They assert that *Alnor* is not to the contrary because the Court of Appeal there quoted the California Supreme Court's decision in *Serrano*, which analyzed attorneys' fees under California Code of Civil Procedure § 1021.5. They state:

> "While Plaintiff cites *Christian Research Inst. v. Alnor*, 165 Cal.App.4th 1315, 1319 (2008), to support his incorrect argument that courts have the discretion to deny fees to parties that prevail on a SLAPP motion (Opp. at 7), that case quotes a case that itself quotes *Serrano v. Unruh*, 32 Cal.3d 621, 635 (1982), which is a case analyzing attorneys' fees under Section 1021.5 of the California Code of Civil Procedure, not under the SLAPP statute. As shown above, under the express terms of the SLAPP statute (as confirmed by numerous cases in state and federal court), and pursuant to the public policy underlying the SLAPP statute, attorneys' fees are mandatory for prevailing parties." (Reply at 12 n. 6.)

The court disagrees. While courts typically grant attorneys' fees to parties that prevail on an anti-SLAPP motion as a matter of course, the California Supreme Court in *Ketchum* explicitly noted that there can be special circumstances in which a trial court has the discretion to reduce an unreasonably inflated award "or deny one altogether." See *Ketchum*, 24 Cal.4th at 1137-38. While defendants are correct that the *Serrano* court analyzed an attorneys' fees award under California Code of Civil Procedure § 1021.5, the *Ketchum* court applied the *Serrano* Court's reasoning to attorneys' fee awards under § 425.16(c). Thus, under *Ketchum*, and the California Court of Appeal's decision in *Alnor*, the court believes it is a correct statement of law to say that, a court may have discretion in exceptional circumstances to deny a request for attorneys' fees outright. In light of the policy underlying California's anti-SLAPP statute, however, the court concludes that in all but the most extreme situations, it is preferable to reduce an inflated request

"In awarding fees the trial court is not constrained by the amount sought by the successful moving parties, but is obligated to award 'reasonable attorney fees under section 425.16 [that] adequately compensate [ ] them for the expense of responding to a baseless lawsuit.'" *Jackson v. Yarbray*, 179 Cal.App.4th 75, 92 (2009) (citing *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.App.4th 777, 785 (1996); *Robertson v. Rodriguez*, 36 Cal.App.4th 347, 361-62 (1995)); see *Dowling v. Zimmerman*, 85 Cal.App.4th 1400, 1423 (2001) ("That subdivision authorizes the court to make an award of reasonable attorney fees to a prevailing defendant, which will adequately compensate the defendant for the expense of responding to a baseless lawsuit" (citation omitted)); see also *Conroy v. Spitzer*, 70 Cal.App.4th 1446, 1454-55 (1999) ("Further, the right of a prevailing defendant to recover attorney fees and costs adequately compensates him for 'the expense of responding to a baseless lawsuit,'" citing *Robertson*, 36 Cal.App.4th at 362); *Moore v. Liu*, 69 Cal.App.4th 745, 750 (1999) ("The purpose of section 425.16 is clearly to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance,'" citing Cal. Code Civ. Proc. § 425.16(a)).

The court has broad discretion in determining what award is "reasonable" in a particular case. See *Silverstein v. E360Insight, LLC*, No. CV 07-2835 CAS, 2008 WL 1995217, *8 (C.D. Cal. May 5, 2008) ("While a court is required to award the prevailing party attorney's fees, the amount of such fees is to be determined by the court in its discretion. The amount awarded must be reasonable, and it must also 'adequately compensate the [prevailing party] for the expense of responding to a baseless suit," citing *Metabolife International, Inc. v. Wornick*, 213 F.Supp.2d 1220, 1222 (S.D. Cal. 2002); *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal.App.4th 659, 685 (2006)); *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1183-84 (S.D. Cal. 2008) ("[T]he court has

---

for fees rather than deny fees outright. See *Robertson v. Rodriguez*, 36 Cal.App.4th 347, 362 (1995) ("The right of prevailing defendants to recover their reasonable attorney fees under section 425.16 adequately compensates them for the expense of responding to a baseless lawsuit"). This is in keeping with the application of myriad other attorneys' fees statutes, which have been interpreted to provide for an award of *reasonable* fees.

broad discretion in determining the reasonable amount of attorney fees and costs to award a prevailing defendant" (citations omitted)).

The fees awarded should encompass all proceedings directly related to defendants' special motion to strike, including those hours expended in obtaining fees.  See *Ketchum*, 24 Cal.4th at 1141 ("Ketchum further asserts that the fee award improperly included 'fees on fees,' i.e., fees incurred in litigating the award of attorney fees.  The Court of Appeal correctly rejected the argument: an award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16"); *Jackson*, 179 Cal.App.4th at 92 ("The fees awarded [pursuant to § 425.16] should include services for all proceedings, including discovery initiated by the opposing party pursuant to section 425.16, subdivision (g), directly related to the special motion to strike"); see also *March v. Twin Cities Police Authority*, No. C 14-00512 SI, 2014 WL 3828172, *1 (N.D. Cal. Aug. 4, 2014) ("[A]n award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under the anti-SLAPP statute" (citation omitted)); *Blackburn v. ABC Legal Services, Inc.*, No. 11-CV-01298 JSW (NC), 2012 WL 1067632, *4 (N.D. Cal. Feb. 24, 2012) ("Reasonable attorneys' fees and costs shall be awarded only for work performed in connection with the anti-SLAPP motion and associated motion for fees"); *Winters v. Jordan*, No. 2:09-CV-00522-JAM-KJN-PS, 2011 WL 1549391, *3 (E.D. Cal. Apr. 21, 2011) ("The successful defendant is also entitled to fees incurred in filing the motion for anti-SLAPP fees, also referred to as 'fees on fees,'" citing *Ketchum*, 24 Cal.4th at 1141); *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 141 Cal.App.4th 15, 21 (2006) ("Assuming section 425.16, subdivision (c), is limited to an award of costs and attorney fees incurred in connection with the special motion to strike, this has been interpreted to include expenses incurred in litigating an award of attorney fees after the trial court has granted the motion to strike," citing *Ketchum*, 24 Cal.4th at 1141); *Wilkerson v. Sullivan*, 99 Cal.App.4th 443, 446 (2002) ("Under section 425.16, subdivision (c), a defendant who prevails on an anti-SLAPP motion to strike is entitled to recover his or her attorney fees.  The statute is

1    broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing

2    defendant for expenses incurred in extricating herself from a baseless lawsuit").

3         Fees and costs unrelated to the special motion to strike are not recoverable under § 425.16,

4    however.  See, e.g., *League of United Latin American Citizens, Inc. v. Eureste*, No. 13-CV-

5    04725-JSC, 2014 WL 5473560, *1 (N.D. Cal. Oct. 28, 2014) ("'The defendant may recover fees

6    and costs only for the motion to strike, not the entire litigation,'" citing *Alnor*, 165 Cal.App.4th

7    at 1320); *Winters*, 2011 WL 1549391 at *3 ("In regards to attorneys' fees and costs, California's

8    anti-SLAPP statute provides, in part, that except in circumstances not present here, 'a prevailing

9    defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and

10   costs.'  Cal.Civ.Proc.Code § 425.16(c).  Under California law, 'any SLAPP defendant who

11   brings a successful motion to strike is entitled to mandatory attorney fees.'  *Ketchum v. Moses*,

12   24 Cal.4th 1122, 1131 [ ] (2001).  A California Court of Appeal has persuasively held that 'the

13   Legislature intended that a prevailing defendant on a motion to strike be allowed to recover

14   attorney fees and costs only on the motion to strike, not the entire suit.'  *Lafayette Morehouse,*

15   *Inc. v. Chronicle Publishing Co.*, 39 Cal.App.4th 1379, 1383 (1995)"); *S.B. Beach Properties*

16   *v. Berti*, 39 Cal.4th 374, 381 (2006) ("Thus, the Legislature 'establish[ed] a special procedure.

17   It [gave] the defendant the right to file a 'special motion to strike' the claim.' . . .  And only

18   '[d]efendants who *prevail on the motion to strike* are entitled to attorney's fees and costs.' . . .

19   Consistent with this understanding, the fee 'provision applies only to the motion to strike, and not

20   to the entire action.'  (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1264 (1991-1992 Reg.

21   Sess.) as introduced Jan. 6, 1992, p.5; see also *Lafayette Morehouse, Inc. v. Chronicle Publishing*

22   *Co.*, 39 Cal.App.4th 1379, 1384 (1995)"); *City of Industry v. City of Fillmore*, 198 Cal.App.4th

23   191, 218 (2011) ("The defendant can recover only its fees and costs in connection with the

24   motion, not the entire action," citing *Jackson*, 179 Cal.App.4th at 92; *Alnor*, 165 Cal.App.4th at

25   1320).

26

27

28

**B.      Whether Defendants Were the "Prevailing Parties" on Their Anti-SLAPP Motions**

As noted, § 425.16(c) limits an award of attorneys' fees to the "prevailing party" on an anti-SLAPP motion.  See CAL. CODE CIV. PROC. § 425.16(c)(1) ("[A] *prevailing party* on a special motion to strike shall be entitled to recover his or her attorney's fees and costs" (emphasis added)); see also *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1115 (C.D. Cal. 2004) ("Under section 425.16(c), a defendant who prevails on an anti-SLAPP motion to strike is entitled to recover his or her attorney fees," citing *Pfeiffer Venice Props. v. Bernard*, 101 Cal.App.4th 211, 216 (2002)); *Thomas v. Los Angeles Times Communications, LLC*, 189 F.Supp.2d 1005, 1010 (C.D. Cal. 2002) ("The prevailing party on a special motion to strike is entitled to his or her attorneys' fees and costs," citing *United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970 (9th Cir. 1999)).  Thus, before determining whether defendants are entitled to the attorneys' fees they seek, the court must ascertain whether they were the "prevailing parties" on their anti-SLAPP motions.

**1.      Whether Defendants Were the "Prevailing Parties" on Their First Anti-SLAPP Motion**

Defendants maintain they were the "prevailing parties" on their first anti-SLAPP motion and thus are entitled to attorneys' fees incurred in preparing and filing that motion.[29]  They note that, of the twelve state law claims alleged in Mireskandari's first amended complaint that were the subject of their first special motion, the court struck two with prejudice and nine without prejudice; five of these were subsequently abandoned and two were stricken in the court's order on defendants' second anti-SLAPP motion.[30]  Mireskandari counters that defendants are not entitled to recover all of the fees they incurred preparing the first anti-SLAPP motion because the court only struck two of his state law claims with prejudice; he thus asserts that defendants are the "prevailing parties" with respect to only two of the twelve claims challenged by the anti-SLAPP

---

[29]Motion at 4-8.

[30]*Id.*

11

motion.[31]  Because the court did not previously determine whether defendants were the prevailing party with respect to the first anti-SLAPP motion, it addresses that question first.

### a.   Seventh and Eighth Causes of Action

As noted, in its order granting in part and denying in part defendants' first anti-SLAPP motion, the court struck Mireskandari's seventh and eighth causes of action for tortious interference with contract and tortious interference with prospective economic advantage as time-barred under the applicable statutes of limitations.[32]  Because these claims were dismissed with prejudice, defendants clearly prevailed.  See *March*, 2014 WL 3725931 at *12 (dismissing plaintiff's claims for abuse of process and intentional infliction of emotional distress with prejudice and concluding that "defendants Woodruff and Rimes have prevailed on their special motion to strike [and] are entitled to a mandatory award of reasonable attorney's fees"); see also *Thornbrough v. Western Placer Unified School District*, No. 2:09-CV-02613-GEB-GGH, 2010 WL 2179917, *13 (E.D. Cal. May 27, 2010) ("Under the second prong of the anti-SLAPP analysis, Plaintiff bears the burden of showing a minimal probability of success on his claims against Girard.  However, since Plaintiff's claims against Girard have 'already been dismissed . . . with prejudice,' 'Plaintiff does not enjoy the probability of success.  On the contrary, as Plaintiff's [claims against Girard] have been dismissed with prejudice, Plaintiff has by definition failed.'  Therefore, Girard's anti-SLAPP motion to strike is granted").

### b.   First, Second, Third, Fourth, Sixth, Tenth, Eleventh, Twelfth and Thirteenth Causes of Action

#### (1)   Fourth, Sixth, Eleventh, Twelfth, and Thirteenth Causes of Action

The court also granted defendants' special motion to strike Mireskandari's first cause of action for violation of the UCL, California Business and Professions Code § 17200; second cause of action for breach of contract; third cause of action for intrusion upon seclusion; fourth cause

---

[31]Opposition at 8-9.

[32]SLAPP Order at 21-24.

of action for disclosure of private facts; sixth cause of action for invasion of privacy under Article 1, § 1 of the California Constitution; tenth cause of action for violation of the CCCL, California Penal Code § 502; eleventh cause of action for violation of the CIPA, California Penal Code § 630; twelfth cause of action for breach of confidentiality; and thirteenth cause of action for intentional infliction of emotional distress without prejudice.[33]  Mireskandari argues that defendants did not prevail on these claims because the court did not strike the causes of action with prejudice, but granted him leave to amend and replead the claims.[34]  Defendants counter that they are the prevailing parties on seven of the nine claims that were dismissed without prejudice.[35]

Defendants contend they prevailed on Mireskandari's fourth, sixth, eleventh, twelfth, and thirteenth causes of action because after the court struck the claims in its first SLAPP order, Mireskandari abandoned them by failing to replead them in the second amended complaint or include them in his complaint in the separate state court proceeding.  In support of their argument, defendants cite *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*, 122 Cal.App.4th 1049, 1056 (2004), and *Art of Living Foundation v. Does 1-10*, No. 5:10-CV-05022-LHK, 2012 WL 1565281, *1 (N.D. Cal. May 1, 2012).

In *Sylmar*, the Watts/ Willowbrook Boys and Girls Club filed a complaint against Pueblo and other contractors alleging breach of contract and negligence in connection with the renovation and expansion of their facilities.  *Sylmar*, 122 Cal.App.4th at 1052-53.  Pueblo cross-complained against Watts/Willowbrook and various subcontractors, including Sylmar, seeking indemnity and contribution from the subcontractors and alleging breach of contract and negligence.  *Id.* at 1053. In response, Sylmar filed a cross-complaint against Pueblo, alleging breach of contract, fraud, and breach of the covenant of good faith and fair dealing.  *Id.*  Pueblo filed demurrers to each of Sylmar's claims, and filed an anti-SLAPP motion to strike Sylmar's fraud cause of action.  *Id.* Before the anti-SLAPP motion and demurrers could be heard, Sylmar filed a first amended

---

[33]SLAPP Order at 61.

[34]Opposition at 7-8; see *id.* at 8, n. 1.

[35]Motion at 5-6.

complaint, which pled additional factual allegations supporting its fraud claim against Pueblo. *Id.* The trial court nonetheless granted Pueblo's anti-SLAPP motion, struck the fraud claim in Sylmar's original cross-complaint and awarded Pueblo attorneys' fees under §425.16(c). *Id.* at 1053-54. Sylmar subsequently withdrew the fraud claim stated in its amended complaint. *Id.* at 1053.

On appeal, the California Court of Appeal affirmed the trial court's order. It rejected Sylmar's contention that "the trial court erred in hearing the SLAPP motion because it filed a first amended complaint pursuant to [California Code of Civil Procedure] section 472 prior to the hearing on the motion." *Id.* at 1054. Sylmar relied on the statement in § 472 that "any pleading may be amended once by the party of course, and without costs, at any time before the answer or demurrer is filed," CAL. CODE. CIV. PROC. 472; by hearing the anti-SLAPP motion and awarding Pueblo attorneys' fees under § 425.16(c), Sylmar argued, the trial court imposed "costs" on it for the filing of an amended complaint in violation of § 472. *Id.* The Court of Appeal "discern[ed] no conflict between the two sections," reasoning that "the attorney fees and costs were awarded based upon [the] filing of the original complaint," not the filing of the amended complaint. *Id.* Importantly, the court noted that Sylmar could not avoid liability for attorneys' fees under the anti-SLAPP statute by amending its pleading *before* the court ruled on the motion to strike, just as it could not avoid liability for fees and costs by dismissing voluntarily a claim that is the subject of a pending anti-SLAPP motion to strike. *Id.* at 1056 ("Sylmar's argument would require a strict and technical reading of section 425.16 to insert section 472 as an implied condition to its application. We cannot perceive the Legislature intended such a result. Thus, we conclude the determination of Pueblo's claim for attorney fees and costs was not moot and the trial court did not err in addressing the merits of the SLAPP motion," citing *Pfeiffer*, 101 Cal.App.4th at 218; *Liu*, 69 Cal.App.4th at 752).

*Sylmar*'s procedural posture is distinguishable from the instant case. There, the court considered the merits of Pueblo's special motion to strike despite the fact that Sylmar had amended its complaint prior to the hearing on the motion. After reaching the merits, the court struck the fraud claim with prejudice, and granted Pueblo attorneys' fees as the "prevailing party" on that

claim.  Here, however, the court addressed the merits of defendants' first motion to strike and struck several of Mireskandari's causes of action *with leave to amend*.[36]  Despite the procedural differences, however, the court finds *Sylmar* somewhat instructive.  Just as Sylmar could not avoid a prevailing party determination and award of attorneys' fees under the anti-SLAPP statute by amending his claim before the anti-SLAPP motion was heard and later withdrawing it altogether, Mireskandari cannot avoid an award of attorneys' fees on claims that were stricken with leave to

---

[36]The procedural differences between *Sylmar* and this case derive from the fact that *Sylmar* was decided by a California state court, while this case was pending in federal court.  The *Sylmar* court struck Sylmar's claim with prejudice, recognizing that providing leave to amend would be directly at odds with the legislative purpose behind the anti-SLAPP statute and the policies underlying it.  See *Sylmar*, 122 Cal.App.4th at 1055 ("'In enacting the anti-SLAPP statute, the Legislature set up a mechanism through which complaints that arise from the exercise of free speech rights 'can be evaluated at an early stage of the litigation process' and resolved expeditiously.  Section 425.16 is just one of several California statutes that provide 'a procedure for exposing and dismissing certain causes of action lacking merit.'  Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.  *Instead of having to show a probability of success on the merits, the SLAPP plaintiff would be able to go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading.  This would trigger a second round of pleadings, a fresh motion to strike, and inevitably another request for leave to amend.*'  By the time the moving party would be able to dig out of this procedural quagmire, the SLAPP plaintiff will have succeeded in his goal of delay and distraction and running up the costs of his opponent.  Such a plaintiff would accomplish indirectly what could not be accomplished directly, i.e., depleting the defendant's energy and draining his or her resources.  This would totally frustrate the Legislature's objective of providing a quick and inexpensive method for unmasking and dismissing such suits,'" quoting *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068, 1073-74 (2001)).

      In deciding defendants' first anti-SLAPP motion, by contrast, the court granted Mireskandari leave to amend certain of the claims because dismissal "without granting leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Communications*, 377 F.3d 1081, 1091 (9th Cir. 2004); see, e.g., *id.* (affirming the district court's decision to permit amendment before ruling conclusively on an anti-SLAPP motion); *Art of Living Foundation v. Does 1-10*, No. 10-5022, 2011 WL 2441898, *9 (N.D. Cal. June 15, 2011) ("[S]triking Plaintiff's trade libel claim pursuant to the California Anti-SLAPP Statute at this point would 'directly collide' with Rule 15's liberal amendment policy").

1   amend as a result of defendants' first anti-SLAPP motion by failing to replead those claims in a

2   second amended complaint.

3       *Art of Living Foundation* is particularly instructive.  There, plaintiff filed a complaint in

4   federal court alleging defamation, misappropriation of trade secrets, copyright infringement, and

5   trade libel based on posts on unknown defendants' blogs.  *Art of Living Foundation*, 2012 WL

6   1565281 at *4.  Two blogger defendants later appeared specially through counsel and filed three

7   motions: (1) a motion to dismiss for lack of personal jurisdiction and to dismiss plaintiff's

8   defamation and trade libel claims under Rule 12(b)(6); (2) a special motion to strike plaintiff's

9   defamation, trade libel, and trade secret claims; and (3) a motion to quash or modify a previous

10  order allowing plaintiff to conduct discovery.  *Id.*  The court ruled jointly on defendants' motion

11  to dismiss and special motion to strike.  It denied the motion to dismiss for lack of personal

12  jurisdiction, granted defendants' motion to dismiss plaintiff's defamation and trade libel claims

13  with leave to amend the claims, denied the special motion to strike plaintiff's trade secret claim,

14  and declined to reach the merits of the motion to strike the defamation and trade libel claims that

15  were dismissed under Rule 12(b)(6).  *Id.* at *5.  Despite being given leave to replead the

16  defamation and trade libel claims, plaintiff failed to do so.  *Id.*

17      After plaintiff failed to reallege the claims, defendants asked that the court award them

18  attorneys' fees as "prevailing defendants" under the anti-SLAPP statute.  *Id.* at *24.  Defendants

19  maintained "that they qualif[ied] as 'prevailing defendant[s]' for purposes of §425.16(c) because

20  [their] first special motion to strike the defamation and trade libel claims was denied as moot

21  without prejudice, upon the Court's dismissal of those claims with leave to amend, and Plaintiff

22  has not renewed those claims."  *Id.*  Plaintiff countered that "the anti-SLAPP remedies no longer

23  remain available to [d]efendants" because the court never ruled on the motion to strike.  *Id.*  The

24  court recognized that although "the anti-SLAPP motion was no longer pending at the time Plaintiff

25  amended its complaint," "courts must consider the 'critical issue' of 'which party realized its

26  objectives in the litigation.'"  *Id.* at *25 (quoting *Plevin v. City and County of San Francisco*, No.

27  11-02359, 2011 WL 3240536, *4 (N.D. Cal. July 29, 2011) (in turn quoting *Coltrain v.*

28  *Shewalter*, 66 Cal.App.4th 94, 107 (1998)).  Because plaintiff did "not assert[ ], let alone

1   demonstrate[ ], that it dismissed the defamation and trade libel claims because [it] 'had

2   substantially achieved its goals through settlement or other means, because the defendant was

3   insolvent, or for other reasons unrelated to the probability of success on the merits,'" the court

4   concluded that defendants were the "prevailing parties" and were entitled to recover attorneys'

5   fees incurred in connection with filing a motion to strike those claims. *Id.* at *25-26.

6       In the present case, Mireskandari did not reallege his fourth, sixth, eleventh, twelfth, and

7   thirteenth claims after the court struck them without prejudice in the first SLAPP order. As in *Art*

8   *of Living Foundation*, Mireskandari has not asserted or shown that he abandoned the claims for

9   any reason other than one related to his probability of success on the merits. The claims were

10  stricken because he failed to allege sufficient facts supporting them and/or because they were

11  untimely, and he could thus not demonstrate a probability of prevailing on the merits.[37] Given the

12  

13  [37]See SLAPP Order at 38 ("Accordingly, the fact that plaintiff had 'flunked out' of Whittier

14  College of Law and another school, and received low exam scores was 'place[d] into the public

15  domain' when the Daily Mail published its July 2009 article; as a result, those facts cannot form

16  the basis for a PDPF [public disclosure of private facts] claim. The court therefore concludes that

    plaintiff has failed to demonstrate a probability that he will prevail on his PDPF claim"); *id.* at 47-

17  48 ("Although plaintiff alleges that defendants 'continue to commit serious invasions of [his right

    to] privacy, by obtaining and disclosing his private academic and educational records to the

18  public,' he pleads no facts supporting this assertion that 'raise [his] right to relief above the

    speculative level.' Plaintiff does not allege how defendants continue to obtain or publish his

19  private academic and educational records. For all of these reasons, the court concludes that

    plaintiff has failed to demonstrate a probability of prevailing on the merits of his invasion of

20  privacy claim. The court will therefore strike plaintiff's sixth cause of action"); *id.* at 32 ("As

    respects defendants' allegations that plaintiff's 'newsgathering claims' are time-barred, therefore,

21  the court concludes that plaintiff's CIPA and tortious invasion of privacy claims are time-barred.

    It thus strikes plaintiff's third and eleventh causes of action; because those claims are time-barred

22  in their entirety, plaintiff has failed to demonstrate a probability that he will prevail on the merits

23  of those claims"); *id.* at 52 ("As stated, plaintiff fails to allege that he had an understanding with

    defendants that his educational information would not be disclosed. He does not allege that he

24  gave defendants information in confidence, on the understanding that they would maintain his

    confidence. Plaintiff thus fails to demonstrate a probability of prevailing on the merits of his claim

25  for breach of confidentiality. The court will thus strike the twelfth cause of action"); *id.* at 54-55

26  ("To the extent that plaintiff's IIED claim is based on defendants' intrusive investigation tactics,

    it fails for other reasons. A claim based on defendants' alleged wiretapping is time-barred for the

27  reasons already stated. An IIED claim based on defendants' 2008 investigation of his educational

28  background, including the accessing of his academic records through NSC and communications

1  lack of any other explanation, the fact that he did not replead the claims gives rise to an inference

2  that Mireskandari did not believe he could overcome the deficiencies the court noted in the claims.

3  Because defendants "realized [their] objectives in the litigation," *Plevin*, 2011 WL 3240536 at *4

4  (quoting *Coltrain*, 66 Cal.App.4th at 107), i.e., reduction in the number of allegedly

5  unmeritorious causes of action they had to litigate and defend, as a result of Mireskandari's

6  abandonment of these five claims, the court concludes that defendants are properly considered the

7  "prevailing parties" on Mireskandari's fourth, sixth, eleventh, twelfth, and thirteenth causes of

8  action. See *Art of Living Foundation*, 2012 WL 1565281 at *25 ("In *Plevin*, the district court

9  found that the defendant's motion to strike certain state law claims was denied as moot because

10  plaintiff did not intend to assert the claims in an amended complaint, but nonetheless found that

11  the defendant could move for attorneys' fees under the anti-SLAPP motion.  Similarly here, the

12  Court concludes that Plaintiff's amendment of the Complaint to remove the defamation and trade

13  libel claims is tantamount to a voluntary dismissal of those claims, which would likely have

14  become subject to another anti-SLAPP motion.  Accordingly, the Court concludes that Defendants

15  are entitled to move for attorneys' fees under § 425.16(c)(1) with respect to the defamation and

16  trade libel claims after judgment is entered"); see also *Plevin*, 2011 WL 3240536 at *4-5

17  (concluding that the defendant was entitled to seek attorneys' fees under the anti-SLAPP statute

18  after plaintiff's original complaint was dismissed and he did not reallege his state law claims in

19  an amended complaint).

20

21

22

23

_____

24  with his former educational institutions is also time-barred.  Although plaintiff asserts that
defendants continue to investigate him, he has alleged no facts concerning purportedly intrus[ive]

25  investigative tactics that occurred within the limitations period.  The court cannot determine,

26  consequently, whether any investigative tactics that might support a timely IIED claim rise to the
level of 'outrageous conduct.'  Plaintiff thus fails to demonstrate a probability of prevailing on his

27  IIED claim to the extent based on defendants' investigation tactics.  Because plaintiff has not

28  alleged a cognizable basis for his IIED claim, the court will strike the thirteenth cause of action").

**(2)      First and Second Causes of Action**

As respects Mireskandari's first cause of action for violation of the UCL and second cause of action for breach of contract, defendants argue that they should be considered the "prevailing parties" on those claims because they ultimately succeeded in having the claims stricken with prejudice in their second anti-SLAPP motion.[38]   Defendants are correct; as the court discusses *infra*, it has concluded that defendants were the "prevailing party" with respect to the UCL and breach of contract claims alleged in Mireskandari's second amended complaint.   The question remains, however, whether defendants' subsequent success in striking the first and second causes of action is sufficient to support the conclusion that defendants prevailed on those claims with respect to the first anti-SLAPP motion, which resulted in their being stricken without prejudice. The court concludes that it is sufficient and defendants are likewise the "prevailing parties" with respect to the UCL and breach of contract claims for purposes of the first special motion to strike.

In *Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011), the Ninth Circuit considered whether the district court abused its discretion in awarding defendants' attorneys' fees for work expended in relation to their first anti-SLAPP motion when they only ultimately succeeded in striking the claims with prejudice in a second anti-SLAPP motion.   The court concluded that the district court had not abused its discretion and affirmed the award of attorneys' fees for work on the first anti-SLAPP motion.   *Id.*   The court observed that, in granting the fee request, the district court noted that the work related to the first anti-SLAPP motion was "overlapping" and "integral to Defendants' eventual success" in ultimately striking the causes of action from the complaint.   *Id.*   Because defendants "Defendants [were] again the prevailing party, they [were] entitled to attorney's fees for work done in the course of bringing their ultimately successful anti-SLAPP motion," which included work performed on the first motion related to the claims that were ultimately stricken in the second motion.   *Id.*

---

[38]*Id.* at 5.

So too here, defendants' initial anti-SLAPP motion was integral and related to their eventual success in striking the UCL and breach of contract claims from the second amended complaint with prejudice.  The first motion challenged the merits of each of Mireskandari's state law claims; after reviewing it, the court struck a majority of those claims.  The first motion revealed deficiencies in Mireskandari's pleadings that were identified in the court's order; to survive a second motion, Mireskandari had to address and remedy those deficiencies.  Although he repled the claims in his second amended complaint in this action, he later obtained new counsel, who voluntarily dismissed this action while defendants' second anti-SLAPP motion – which sought dismissal of the claims – was pending.  Thereafter, Mireskandari filed an action in state court that did not assert violation of the UCL or breach of contract.  As a consequence, in ruling on defendants' second anti-SLAPP motion, the court struck the claims with prejudice.  The court observed that Mireskandari had not offered "reasons unrelated to the probability of success on the merits" of these claims for eliminating them in his state court complaint, and thus that, by bringing the second motion – which raised arguments concerning these claims similar to those asserted in the original motion – defendants had narrowed the scope of the case and achieved a measure of success.  Because defendants' first motion was but one part of a continuous effort to have the court strike the UCL and breach of contract claims, and because much of the work performed to attack those claims in the first motion was useful in filing the second, the court concludes that defendants were the prevailing parties on such claims in their first anti-SLAPP motion.  See *Mann v. Quality Old Time Serv., Inc.*, 139 Cal.App.4th 328, 345 (2006) ("The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way").

        **c.**    **Whether, Because They Ultimately Prevailed on Nine Claims, Defendants Are the Prevailing Parties on the First Anti-SLAPP Motion**

For the reasons stated, the court concludes that defendants were the "prevailing parties" with respect to nine claims that were stricken by the court in response to defendants' first anti-

SLAPP motion – the first, second, fourth, sixth, seventh, eighth, eleventh, twelfth, and thirteenth causes of action.

The question is thus whether defendants are the "prevailing parties" because they prevailed on nine of Mireskandari's twelve state law claims.  "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion."  *Mann*, 139 Cal.App.4th at 340.  See *id.* at 349-50 ("[A] party need not succeed in striking every challenged claim to be considered a prevailing party within the meaning of section 425.16.  A contrary conclusion would require a partially prevailing defendant to bear the entire cost of the anti-SLAPP litigation at the outset of the case.  This would create a strong disincentive for a defendant to bring the motion, undermining the legislative intent to encourage defendants to utilize the anti-SLAPP procedure to eliminate SLAPP claims and to discourage plaintiffs from bringing meritless SLAPP claims"); see also *New.Net, Inc.*, 356 F.Supp.2d at 1115 ("The statute is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating him or herself from a baseless lawsuit.  An award is proper even if the anti-SLAPP motion is granted as to only some of a plaintiff's claims," citing *Wilkerson*, 99 Cal.App.4th at 446; *ComputerXpress v. Jackson*, 93 Cal.App.4th 993, 1020 (2001)).

In *Mann*, the court held that defendants were prevailing parties because they succeeded in striking one of plaintiffs' four causes of action – a trade libel claim – even though a defamation claim remained.  *Id.* at 337, 340.  The court explained that "although trade libel bears similarity to the defamation claim that remained in the litigation, the two causes of action are not identical," and that "[t]he elimination of the trade libel cause of action . . . successfully narrowed the scope of the lawsuit, limiting discovery, reducing potential recoverable damages, and altering the settlement posture of the case."  *Id.* (citations omitted).

Here, as in *Mann*, the dismissal with prejudice of the interference claims – the seventh and eighth causes of action – and Mireskandari's abandonment of the fourth, sixth, eleventh, twelfth, and thirteenth causes of action in his second amended complaint significantly narrowed the scope

21

of litigation. Prior to the filing of their first anti-SLAPP motion, defendants were faced with a complaint pleading twelve state law causes of action challenging a wide range of conduct and a wide range of publications. As a result of the first SLAPP motion, defendants eliminated seven of the twelve causes of action and; they were, moreover, ultimately successful in having the court strike two more additional state law claims in the second anti-SLAPP motion because they had not been alleged in the state court action . Additionally, their first motion narrowed the issues presented, as the court concluded that no claims could proceed based on defendants' publication of a September 2008 cartoon or characterization of Mireskandari as a "convicted conman."[39] Because defendants achieved a practical benefit when the first, second, fourth, sixth, seventh, eighth, eleventh, twelfth, and thirteenth causes of action were eliminated, the court concludes that they are the prevailing parties on these claims for purposes of obtaining fees and costs under the anti-SLAPP statute. Cf. *Sahlolbei v. Steven Montgomery*, No. E053031, 2012 WL 3294960, *4 (Cal. App. Aug. 14, 2012) (Unpub. Disp.)[40] ("'A defendant need not succeed in striking every challenged claim to be considered a prevailing defendant . . . . Instead, a defendant is entitled to recover fees and costs in connection with a partially successful motion, unless the results obtained are insignificant and of no practical benefit to the defendant,'" quoting *City of Industry v. City of Fillmore*, 198 Cal.App.4th 191, 218 (2011)); *Lin v. City of Pleasanton*, 176 Cal.App.4th 408, 426 (2009) ("'A party who partially prevails on an anti-SLAPP motion must generally be considered

---

[39]SLAPP Order at 61, n. 119 ("To the extent plaintiffs' claims are based on defendants' publication of the September 2008 cartoon or statements characterizing him as a 'convicted conman,' the claims are dismissed with prejudice; as discussed, the First Amendment clearly provides a defense to such claims, and no evidence or argument would change the outcome of an anti-SLAPP motion seeking to strike them. See *Graham-Sult v. Clainos*, No. 10-4877, 2011 WL 2531201, * 10 (N.D. Cal. June 24, 2011) (granting an anti-SLAPP motion to strike with prejudice because amendment would be futile).").

[40]Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority." *Scottsdale Ins. Co. v. OU Interests, Inc.*, No. C 05-313 VRW, 2005 WL 2893865, *3 (N.D. Cal. Nov. 2, 2005) (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003) ("[W]e may consider unpublished state decisions, even though such opinions have no precedential value")).

a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion. The determination whether a party prevailed on an anti-SLAPP motion lies within the broad discretion of a trial court,'" citing *Mann*, 139 Cal.App.4th at 340).

## 2. Whether Defendants Were the "Prevailing Parties" on Their Second Anti-SLAPP Motion

The court previously concluded in its August 4, 2014 order granting defendants' second anti-SLAPP motion that defendants were the "prevailing parties" on that motion. It stated:

> "Here, as in *Mann*, the elimination of the breach of contract and UCL claims narrows the scope of the litigation. The breach of contract claim alleged breach of a purported contract between Gardner and NSC, pursuant to which Gardner was able to access Mireskandari's educational records. The UCL claim was based, *inter alia*, on alleged violations of the UK Data Protection Act, the UK Regulation of Investigatory Powers Act of 2000, the UK Criminal Law § 21 Theft Act of 1968, and § 1 of the UK Criminal Law Act of 1977. Removal of these claims obviated the need to litigate these issues, and narrowed the scope of the case. Mireskandari's UCL claim, moreover, sought injunctive relief, a remedy not included in the prayer in his state court complaint. The absence of a prayer for this form of relief also demonstrates that elimination of the UCL claim was not insignificant. Because defendants achieved a practical benefit when the breach of contract and UCL claims were eliminated, the court concludes that they are the prevailing parties on those claims for purposes of obtaining fees and costs under the anti-SLAPP statute."[41]

Thus, defendants are entitled to recover attorneys' fees under § 425.16(c) that are directly related to the preparation and prosecution of their second anti-SLAPP motion to strike the UCL and breach of contract claims.

---

[41]Second SLAPP Order at 15-16.

### 3. Conclusion as to Whether Defendants Were the "Prevailing Parties" on Their Anti-SLAPP Motions

For the reasons stated, the court concludes that defendants were the "prevailing parties" on their first and second anti-SLAPP motions as that term is used in § 425.16(c). Accordingly, defendants are entitled to an award of attorneys' fees for work performed in connection with their first anti-SLAPP motion to strike the first, second, fourth, sixth, seventh, eighth, eleventh, twelfth, and thirteenth causes of action. They are also entitled to fees for work performed in connection with their second anti-SLAPP motion to strike the first and second causes of action.

### C. Whether Defendants Should Be Awarded The Requested Attorneys' Fees

In their motion, defendants seek $153,531.20 in attorneys' fees incurred preparing and filing two anti-SLAPP motions and the fee motion.[42] In their reply, they seek an additional $10,068 for drafting the fee motion, $8,145.60 for preparing a reply and supplemental declaration concerning the fee motion, and $1,404 for time spent preparing for and attending a hearing on the motion. Defendants state that their original fee estimate did not take these amounts into account.[43] In toto, therefore, defendants seek as award of $173,148.80 in attorneys' fees.[44]

As the California Supreme Court has noted, the typical starting point for determining an award of attorneys' fees under § 425.16(c) is calculation of the "lodestar" amount, i.e., the product of the "number of hours reasonably expended multiplied by the reasonable hourly rate." *Ketchum*, 24 Cal.4th at 1134; see *id.* at 1135-36 ("When legislation has been judicially construed and subsequent statutes on a similar subject use identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent appears. Here, because the anti-SLAPP provisions refer to attorney fees and costs without

---

[42]Declaration of Nicholas A. Jampol in Support of Defendants' Motion for Attorneys' Fees ("Jampol Decl."), Docket No. 204-1 (Aug. 22, 2014), Exh. A.

[43]Supplemental Declaration of Nicholas A. Jampol ("Supp. Jampol Decl."), Docket No. 212 (Oct. 27, 2014), ¶¶ 3-5.

[44]*Id.*, ¶ 6.

1   indicating any restrictions on how they are to be calculated, we accordingly presume that the

2   Legislature intended courts use the prevailing lodestar adjustment method" (citations omitted));

3   *Jackson*, 179 Cal.App.4th at 93 ("In determining the fee award pursuant to section 425.16, the

4   court may utilize the lodestar method addressed in *Serrano v. Priest*, 20 Cal.3d 25 (1977), and

5   in appropriate cases may include a fee enhancement for the purpose of compensating the attorney

6   for contingent risk, exceptional skill or other factors"); see also *March*, 2014 WL 3725931 at *12

7   ("'[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the

8   'careful compilation of the time spent and reasonable hourly compensation of each attorney . . .

9   involved in the presentation of the case.' *Ketchum*, 24 Cal.4th at 1131-32; see also *Morales v.*

10  *City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ('The 'lodestar' is calculated by multiplying

11  the number of hours the prevailing party reasonably expended on the litigation by a reasonable

12  hourly rate')"); *Minichino v. First California Realty*, No. C-11-5185 EMC, 2012 WL 6554401,

13  *3 (N.D. Cal. Dec. 14, 2012) ("Fee awards under California's Anti-SLAPP statute are calculated

14  using the 'lodestar' approach").

15      After calculating the lodestar amount, the court can adjust that "figure . . . based on

16  consideration of factors specific to the case, in order to fix the fee at the fair market value for the

17  legal services provided." *PLCM Group v. Drexler*, 22 Cal.4th 1084, 1095 (2000) (citing *Serrano*,

18  20 Cal.3d at 49).  Such factors include "the nature of the litigation, its difficulty, the amount

19  involved, the skill required in its handling, the skill employed, the success or failure, and other

20  circumstances in the case." *Michichino*, 2012 WL 6554401 at *3 (citing *PLCM Group*, 22

21  Cal.4th at 1096 (quoting *Melnyk v. Robledo*, 64 Cal.App.3d 618, 623-24 (1976)); *Nichols v. City*

22  *of Taft*, 155 Cal.App.4th 1233, 1240 (2007) ("'[T]he lodestar is the basic fee for comparable legal

23  services in the community; it *may* be adjusted by the court based on factors, including . . . (1) the

24  novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the

25  extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4)

26  the contingent nature of the fee award.  The purpose of such adjustment is to fix a fee at the fair

27  market value for the particular action,'" citing *Ketchum*, 24 Cal.4th at 1132); *Church of*

28  *Scientology v. Wollersheim*, 42 Cal.App.4th 628, 659 (1996) ("'The matter of reasonableness of

attorney's fees [under § 425.16(c) is within the sound discretion of the trial judge.' . . . 'In determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding, the court may and *should* consider 'the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded . . .; the intricacies of the litigation, the labor and necessity for skilled legal training and ability in trying the cause, and the time consumed,'" citing *Stockus v. Marsh*, 217 Cal.App.3d 647, 656-57 (1990)), disapproved on other grounds, *Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2002).

### 1.    Whether the Hourly Rates Requested by Defendants Are Reasonable

When calculating the lodestar, court do not utilize the actual rate charged by a party's attorney. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985) ("Determination of a reasonable hourly rate is not made by reference to rates actually charged the prevailing party," citing *White v. City of Richmond,* 713 F.2d 458, 461 (9th Cir. 1983)). Rather, "in determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210-11; see *Center for Biological Diversity v. County of San Bernardino*, 185 Cal.App.4th 866, 901 (2010) ("Generally, the reasonable hourly rate used for the lodestar calculation is that prevailing in the community for similar work" (internal quotations omitted)).

To assist the court in calculating the lodestar, the parties seeking fees must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 n. 11 (1984). The relevant community is that in which the district court sits. See *Schwartz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995). Declarations from local attorneys who practice in the same area of law regarding the prevailing market rate in the community suffice to establish a reasonable hourly rate. See *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Guam Soc'y of Obstetricians &*

26

*Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates).  See also *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 1215 (9th Cir. 2003) (discussing the affidavit of "an attorney practicing in the same region as Earthquake's attorneys," which opined that "Earthquake's attorney rates were reasonable and customary").

Defendants were represented in this action by Davis Wright Tremaine LLP ("DWT"). DWT is a national law firm of more than five hundred attorneys, with its largest office in Seattle, Washington.[45]  Over the past fifteen years, DWT's Los Angeles office has become increasingly well-known for its work in media and entertainment law; the firm is nationally recognized for its First Amendment, communications law, and intellectual property litigation practice.[46]  Six DWT attorneys assisted with various aspects of the litigation directly related to defendants' first and second anti-SLAPP motions and the fees motion: (1) DWT partner Kelli L. Sager; (2) DWT partner Mary H. Haas; (3) DWT associate Nicholas Jampol; (4) DWT associate Jeff Glasser; (5) DWT associate Dan Laidman; and (6) former DWT associate John Rory Eastburg.[47]

Sager has more than twenty-five years of experience in media and First Amendment litigation and has litigated matters involving California's anti-SLAPP statute extensively.[48]  Among other honors, she has consistently been named one of "America's Leading Lawyers" in First Amendment Litigation by Chambers USA, one of the "Best Lawyers in America" in media law and First Amendment law by Woodward/White, and one of the "Top 50 Intellectual Property

---

[45]Jampol Decl., ¶ 2.

[46]*Id.*

[47]*Id.*, ¶¶ 1-5.

[48]*Id.*, ¶ 5(a).

Lawyers" by the *Los Angeles Daily Journal*.[49]  Defendants seek hourly rates ranging from $520 to $552 for Sager's time.[50]

Haas is the partner-in-charge of DWT's Los Angeles office and has nearly twenty years of litigation experience.  She is a board member of the Los Angeles Chapter of the Association of Business Trial Lawyers and has been named a Southern California Super Lawyer by Super Lawyers Magazine numerous times.[51]  Defendants seek hourly rates ranging from $448 to $464 per hour for Haas' time.[52]

Jampol is a senior associate at DWT with almost eight years of litigation experience, who has been named a "Southern California Rising Star" by Super Lawyers Magazine.[53]  Glasser is a former journalist with more than six years of litigation experience focusing on media and First Amendment cases; he left DWT in 2013 to become Vice President, Legal at the *Los Angeles Times*.[54]  Laidman is a former journalist who has been with DWT for three years, working on media cases; prior to joining the firm, he clerked on the United States Court of Appeals for the Ninth Circuit.[55]  Eastburg has more than five years of media litigation experience and left DWT in 2012 to become Counsel, Legal Affairs at NBCUniversal.[56]  Defendants seek the following hourly rates for Jampol, Glasser, Laidman, and Eastburg:[57]

- Jampol – between $308 and $352 per hour

---

[49]*Id.*

[50]*Id.*, ¶ 5.

[51]*Id.*, ¶ 5(b).

[52]*Id.*, ¶ 5.

[53]*Id.*, ¶ 5(c).

[54]*Id.*, ¶ 5(d).

[55]*Id.*, ¶ 5(e).

[56]*Id.*, ¶ 5(f).

[57]*Id.*, ¶ 5.

28

1     •     Glasser – between $292 and $312 per hour

2     •     Laidman – between $244 and $284 per hour

3     •     Eastburg – $208 per hour

4 In his declaration, Jampol notes that each of the requested hourly rates is $80 to $90 per hour

5 lower than the attorney's standard billing rate.[58]

6        As evidence of the reasonableness of the hourly rates requested, defendants proffer the

7 declaration of in-house counsel at ANL, Lindsay Warwick.[59]  Warwick is a solicitor employed by

8 ANL to oversee outside litigation counsel in various litigation matters, including this action.[60]  In

9 her capacity as in-house counsel, Warwick "regularly communicate[s] with media attorneys and

10 other in-house counsel regarding the reputation of attorneys and firms that practice media law, and

11 [ ] regularly evaluate[s] the reasonableness of fees charged by our outside counsel, both in terms

12 of their hourly billing rates and the number of hours that they expend performing various

13 litigation-related tasks."[61]  Based on her experience overseeing outside counsel and evaluating

14 hourly rates charged for similar services by other law firms in Los Angeles, Warwick states that

15 "DWT's rates are consistent with or lower than rates prevailing in the Los Angeles market for

16 legal services."  She notes that ANL negotiated discounted rates for DWT's work in this case.[62]

17        Based on its familiarity with prevailing market rates in the Central District, as well as

18 Warwick's declaration, the court concludes that the hourly rates sought by DWT, which are lower

19 than the firm's standard billing rates, are reasonable.[63]

20 _____

21 [58]*Id.*

22 [59]Declaration of Lindsay Warwick in Support of Defendants' Motion for Attorneys' Fees

23 ("Warwick Decl."), Docket No. 204-6 (Aug. 22, 2014).

24 [60]*Id.*, ¶ 2.

25 [61]*Id.*

26 [62]*Id.*, ¶ 3.

27 [63]Mireskandari does not object to the hourly rates charged by DWT lawyers or contend that

28 they are unreasonable in light of the professional experience of each attorney and the nature of the

2.      **Hours Billed by DWT**

a.      **Whether Defendants Were Required to Apportion The Hours Expended on the Anti-SLAPP Motions**

Mireskandari argues that the court should deny defendants' motion outright, or substantially reduce the fees they request, because although "apportionment is simple," defendants failed to apportion the hours they lawyers expended between the claims on which they prevailed and those on which they did not.[64] He asserts that apportionment is required because the state law claims challenged in each of defendants' anti-SLAPP motions "were not factually and legally intertwined."[65]  Defendants dispute this, and note that, to the extent they were able to apportion fees, they have done so.[66]

In *Mann*, the court noted that "[a]lthough . . . courts . . . frequently adhere[ ] to the general rule of nonapportionment if claims are overlapping," it was not bound by those decisions because they concerned different fee shifting statutes.  *Mann*, 139 Cal.App.4th at 342.  In assessing the question under any statute providing for the recovery of fees, the court stated, it is necessary to examine "the legislative intent and policies underlying the specific fee-shifting scheme at issue."  *Id.* at 343.  It observed that "[t]he fee-shifting provisions of section 425.16, subdivision (c) were enacted to impose litigation costs on those who assert meritless claims burdening the exercise of the defendant's constitutional free speech and petition rights," and to "encourage private representation for defendants who might otherwise not have the financial resources to retain an attorney."  *Id.* at 344.  Despite these policy objectives, the court stated,

_____

litigation.  Rather, he contends that the attorneys' fees requested by defendants are facially unreasonable because defendants have not attempted to apportion fees to the claims on which they prevailed, and because they reflect duplicative and inefficient billing practices.  (See Opposition at 7-13.)  The court considers these arguments *infra* in evaluating the reasonableness of the number of hours DWT recorded in connection with the anti-SLAPP motions.

[64]Opposition at 7-8.

[65]*Id.* at 11.

[66]Reply at 4-11.

30

1  "when a defendant is only partially successful in challenging portions of the complaint, these

2  policies to ensure prompt and meaningful redress for defendants subject to SLAPP suits must be

3  balanced with the *plaintiff's* constitutional right to petition for redress of his or her claims." *Id.*

4  Thus, whether to award attorneys' fees to a defendant that has partially prevailed on an anti-

5  SLAPP motion involves competing public policies: "(1) the public policy to discourage meritless

6  SLAPP claims by compelling a SLAPP plaintiff to bear a defendant's litigation costs incurred to

7  eliminate the claim from the lawsuit; and (2) the public policy to provide a plaintiff who has

8  facially valid claims to exercise his or her constitutional petition rights by filing a complaint and

9  litigating those claims in court." *Id.* (citing *Ketchum*, 24 Cal.4th at 1131).

10  Faced with these competing policies, the *Mann* court concluded that a defendant that

11  prevails on some, but not all, claims targeted in an anti-SLAPP motion is "not . . . entitled to

12  obtain *as a matter of right* [its] entire attorney fees incurred on successful and unsuccessful claims

13  merely because the attorney work on those claims was overlapping." *Id.* (emphasis original).

14  "Instead, the court should first determine the lodestar amount for the hours expended on the

15  successful claims, and, if the work on the successful and unsuccessful causes of action [was]

16  overlapping, [it] should then consider the defendant's relative success on the motion in achieving

17  [its] objective, and reduce the amount if appropriate." *Id.* See *Ravet v. Stern*, No. 07CV31 JLS

18  (CAB), 2010 WL 3076290, *4 (S.D. Cal. Aug. 6, 2010) ("Pursuant to Cal. Civ. Code § 425.16,

19  Wolhfeil is entitled to attorneys' fees associated with the anti-SLAPP motion.  Wohlfeil argues

20  that the fees award should not be discounted just because the anti-SLAPP motion was unsuccessful

21  in striking two of Plaintiff's five causes of action.  Specifically, Defendant argues that the

22  'arguments and evidence, which defendant presented in support of his unsuccessful Motion to

23  Strike Ravet's Trespass to Chattels and Conversion claims, were precisely the same arguments

24  and evidence which were used to successfully strike Ravet's [other claims].'  However, this Court

25  found that Wolhfeil was 'entitled to attorneys' fees and costs associated with [his] prevailing

26  claims.'  In the instant case, Wohlfeil's anti-SLAPP motion 'prevailed' in striking three of

27  Plaintiff's five causes of action.  To be sure, a 'partially prevailing party is not necessarily entitled

28  to all incurred fees even when the work on the successful and unsuccessful claims was

overlapping.  Thus, Wohlfeil is not entitled to attorneys' fees incurred as to the two non-prevailing causes of action" (citations omitted)); *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, No. C 07-00554 JSW, 2007 WL 2729422 *1 (N.D. Cal. Sept. 18, 2007) ("When work on a motion to strike relating to successful and unsuccessful claims involve[s] discrete factual and legal issues, a court may limit the fees award to those incurred in moving on the successful claims.  However, when the claims challenged by a motion to strike involve overlapping factual or legal issues, the prevailing party is not necessarily entitled to all fees incurred.  Rather, 'the court must consider the significance of the overall relief obtained by the prevailing party in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved,'" citing *ComputerXpress, Inc.*, 93 Cal.App.4th at 1020; *Mann*, 139 Cal.App.4th at 344); *City of Industry*, 198 Cal.App.4th at 218 ("A court awarding fees to the prevailing defendant on a partially successful special motion to strike must exercise its discretion in determining the amount of fees and costs to award in light of the defendant's relative success in achieving its litigation objectives").  Cf. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 157-58 (2006) ("Nor is her case like those in which a defendant has filed a motion under Code of Civil Procedure section 425.16, the anti-SLAPP statute, successfully challenging some causes of action in a complaint but not others.  In such cases, the court has discretion to eliminate hours on unsuccessful claims or simply reduce the award to account for the limited success" (citations omitted)).

Thus, to calculate "the lodestar amount for the hours expended on the successful claims," *Mann*, 139 Cal.App.4th at 344, the court must determine first whether the claims on which defendants prevailed were inexplicably intertwined with the claims on which they did not.  If they were, defendants' failure to apportion fees is not fatal to their attorneys' fee motion; the unapportioned time will represent "hours reasonably expended on the successful claims" because it would be impracticable to separate the time spent on successful claims from the time spent on unsuccessful claims.

"All expenses incurred on common issues of fact and law qualify for an award of attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned."  *Kearney v. Foley and*

*Lardner*, 553 F.Supp.2d 1178, 1184 (S.D. Cal. 2008). However, "mere common issues of fact are insufficient to award all fees when legal theories do not overlap or are not inextricably intertwined." *Id.* Here, there are certainly "common issues of fact" underlying the state law claims asserted in Mireskandari's first and second amended complaints. Mireskandari's claims are based on defendants' alleged investigation of him after he began to represent high-ranking police officers of color in race discrimination lawsuits against the Metropolitan Police Services of London.[67] Defendants purportedly investigated and published articles about Mireskandari online and in Daily Mail publications concerning the lawsuits, a Solicitors Regulation Authority investigation of him, a Solicitors Disciplinary Tribunal proceedings against him, a discrimination complaint he filed against the Solicitors Regulation Authority, his educational background and legal qualifications, criminal allegations against him, and purported financial troubles at his law firm.[68]

Beyond similarities in the underlying facts, the claims shared some common legal theories and issues as is evident from a review of defendants' anti-SLAPP motions. By way of example only, defendants' first motion sought to strike the state law claims in Mireskandari's first amended complaint on grounds common to several of the causes of action:

- that Mireskandari's first, fourth, fifth, sixth, seventh, eighth, tenth, thirteenth, and fourteenth causes of action, which concerned the contents of various articles disseminated to the public, were barred by a one-year statute of limitations;[69]

---

[67]See FAC, ¶ 5; SAC, ¶ 19.

[68]See FAC, ¶¶ 3, 176, 185-86; SAC, ¶¶ 33, 59, 61-68, 70, 72, 110, 117, 118.

[69]Notice of Amended Special Motion to Strike Plaintiff's First Amended Complaint Against Defendants Associated Newspapers Ltd. and David Gardner ("First SLAPP Motion"), Docket No. 42 (June 27, 2012) at 3.

- that each of Mireskandari's claims was barred by the doctrine of *res judicata* to the extent based on four articles that had been the focus of Mireskandari's prior defamation lawsuit against defendants in the UK;[70]

- that Mireskandari's first, fourth, fifth, sixth, seventh, eighth, tenth, thirteenth, and fourteenth causes of action were barred by the First Amendment and California law because the statements on which the claims were premised were not false and thus were not actionable;[71]

- that Mireskandari's first, second, third, fourth, sixth, seventh, eighth, tenth, thirteenth, and fourteenth causes of action were not actionable because the claims were either time-barred, privileged, or did not disclose "private" information required to state an actionable claim;[72]

- that Mireskandari's seventh and eighth causes of action for tortious interference failed because Mireskandari had failed to identify prospective business relationships or contacts and defendants' actions were constitutionally protected;[73] and

- that Mireskandari's first, second, third, sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, and fourteenth causes of action, to the extent based on defendants' newsgathering activities, were insufficiently pled and were time-barred.[74]

Whether Mireskandari's causes of action, premised on common facts, were barred by a one-year statute of limitations governing claims based on content disseminated to the public, or whether they were not actionable because they were barred by *res judicata*, reported truthful information,

---

[70]*Id.* at 3.

[71]*Id.* at 3-5.

[72]*Id.* at 5-6.

[73]*Id.* at 6.

[74]*Id.* at 7-8.

or concerned non-actionable news gathering activities were common legal questions considered by the court in its order granting in part and denying in part defendants' first motion.

Mireskandari disputes this, arguing that the claims asserted in his first and second amended complaints and challenged in defendants' anti-SLAPP motions were not factually or legally intertwined.[75]  Specifically, he asserts that, because the court found several of defendants' legal arguments unpersuasive, no common legal questions existed.  Mireskandari notes, for example, that the court struck the interference claims "based on the two-year statute of limitations for interference torts . . . .[t]hat [ ] does not apply to any other claims asserted in the Complaint." He also contends that the contract and UCL claims were stricken in the first SLAPP order "because of pleading deficiencies that were unique to those claims."[76]  Because each of his claims did not rise or fall on the "common legal issues" defendants assert exist, Mireskandari maintains that no common issues existed, and thus the claims were not inextricably intertwined.

The court cannot agree.  While "common issues of fact" may not be a sufficient basis upon which to find that various claims were "inextricably intertwined" for purposes of an attorneys' fee motion under § 425.16(c), *Kearney*, 553 F.Supp.2d at 1184, there were common legal issues here as well.  As the court has noted, defendants advanced numerous legal arguments in each of the anti-SLAPP motions that were common to most, if not all, of Mireskandari's state law claims. The fact that the court did not ultimately adopt each of defendants' arguments does not change this fact, or suggest that common factual and legal issues did not underlie Mireskandari's claims.  The question is whether the common issues were such that attorney time billed to preparation of each anti-SLAPP motion cannot reasonably be apportioned between claims.  Given the common legal theories advanced in the anti-SLAPP motions, the court concludes that Mireskandari's claims were "inextricably intertwined" and thus defendants were not required to apportion billable time to individual causes of action.

---

[75]Opposition at 11.

[76]*Id.*

### b.      Whether the Hours Billed by Defendants are Reasonable

Because the court has concluded that defendants were not required to apportion time expended preparing the anti-SLAPP motions between causes of action on which defendants ultimately prevailed and those they did not, the court evaluates the reasonableness of all hours billed for preparation of the anti-SLAPP motions and this fee motion.

### (1)      Whether the Hours Billed are Facially Unreasonable

As an initial matter, Mireskandari argues that defendants' request for attorneys' fees in excess of $150,000 is facially unreasonable and excessive and should be denied or substantially reduced on that ground alone.[77]   The court cannot agree with Mireskandari's contention that defendants' request is unreasonable on its face.  As defendants note, California state and federal courts have awarded reasonable attorneys' fees comparable to the amount sought by defendants.[78] See, e.g., *Graham-Sult v. Clainos*, 756 F.3d 724, 751-53 (9th Cir. 2013) (affirming district court's award of $240,506.00 in attorneys' fees to prevailing defendants on their anti-SLAPP motion); *Wornick*, 213 F.Supp.2d at 1228 (granting attorneys' fees in the amount of $318,687.99 to prevailing defendants on an anti-SLAPP motion).[79]  As the *Graham-Sult* court noted, however, "[d]efining what is reasonable by reference to other cases would violate the principle that 'each fee application under [the anti-SLAPP statute] must be assessed on its own merits . . . taking into account what is reasonable under the circumstances.'" *Graham-Sult*, 756 F.3d at 752 (quoting *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal.App.4th 550, 561 (2008)). Nonetheless, the cases cited by defendants show that the fees sought are not unreasonable on their face simply because of the size of award sought.  The court thus evaluates the specifics of the fee request to determine whether the hours billed and fees requested are reasonable.

---

[77]Opposition at 12.

[78]Motion at 17.

[79]See also Jampol Decl., Exh. B (awarding attorneys' fees of $154,518.75 to a prevailing defendant); *id.*, Exh. C (awarding attorneys' fees of $91,106.68 to a prevailing defendant); *id.*, Exh. D (awarding attorneys' fees of $163,187.00 to the prevailing defendant).

1                              **(2)       Whether Defendants Engaged in Excessive Billing**

2        A court may award attorneys' fees only for the number of hours it concludes were

3   reasonably expended on the litigation.   *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)

4   ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant,

5   or otherwise unnecessary").   "[T]he fee applicant bears the burden of documenting the appropriate

6   hours expended in the litigation and must submit evidence in support of th[e] hours worked. . . .'"

7   *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (quoting *Gates v. Deukmejian*, 987 F.2d

8   1392, 1397-98 (9th Cir. 1992)); *Chalmers*, 796 F.2d at 1210 ("[C]ounsel bears the burden of

9   submitting detailed time records justifying the hours claimed to have been expended"); *Pac. W.*

10  *Cable Co. v. City of Sacramento*, 693 F.Supp. 865, 870 (E.D. Cal. 1988) ("The cases do not

11  indicate that every minute of an attorney's time must be documented; they do, however, require

12  that there be adequate description of how the time was spent, whether it be on research or some

13  other aspect of the litigation. . .").   Although a fee applicant "is not required to record in great

14  detail how each minute of [his] time was expended . . . [he must] list[ ] [the] hours and identify[ ]

15  the general subject matter of [the] time expenditures." *Gucci Am., Inc. v. Pieta*, No. CV 04-9626

16  ABC (MCx), 2006 WL 4725707, *2 (C.D. Cal. July 17, 2006) (quotation omitted).

17       Defendants assert DWT spent 541.3 hours preparing the anti-SLAPP motions and this fee

18  motion – 332.10 hours on the first motion; 90.20 hours on the second motion; and 119.0 hours

19  on the fee motion.[80]   Mireskandari argues that the hours billed are excessive, duplicative, and

20  demonstrably inaccurate.[81]   He requests that the court deny the request outright or substantially

21  reduce the total lodestar amount.[82]

22       Defendants proffer Jampol's and Warwick's declarations, which state that the amount of

23  hours billed by defendants' counsel was "reasonable" and "necessary for the defense of

---

26  [80]See Jampol Decl., Exh. A; Supp. Jampol Decl., ¶¶ 3-4.

27  [81]Opposition at 7-11.

28  [82]*Id.* at 11-13.

[Mireskandri's] claims."[83]  Mireskandri cites certain of defendants' billing entries that he asserts show "inefficient or duplicative efforts" and show the hours sought are unreasonable.[84]

As respects the first anti-SLAPP motion, Mireskandri notes that defendants "spent more than 45.3 hours compiling evidence," although "the Court did not rely on any of it."[85]  The court agrees with Mireskandri that the amount of time spent compiling evidence to be submitted with the first anti-SLAPP motion was unreasonable under the circumstances.  Defendants spent the equivalent of more one workweek compiling nearly six hundred pages of exhibits that they submitted in conjunction with their first special motion to strike.[86]  The majority of the evidence was copies of the articles Mireskandari challenged and documents associated with several of Mireskandari's prior lawsuits.[87]  Defendants' motion challenged the legal sufficiency of Mireskandari's pleading of his claims; as a consequence and as the court noted in its order, the motion was evaluated under the standard used in deciding motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[88]  While pleadings and orders from the prior lawsuits could have been judicially noticed under Rule 201 of the Federal Rules of Evidence, and while the articles might have been properly considered under the incorporation by reference doctrine,

---

[83]Jampol Decl., ¶ 14; Warwick Decl., ¶ 4 ("I have reviewed the invoices issued by DWT in this matter.  In addition, I have been actively involved in the defense of this lawsuit, and I am familiar with the services performed and the results achieved by DWT.  Given their work in this case, the invoices they issued, their respective experience and reputations, and the results they have achieved in this litigation, I believe that DWT's fees reflected in this fee application are reasonable, both in terms of the hourly rate charged and the number of hours worked").

[84]Opposition at 12.

[85]*Id.*

[86]See generally Declaration of Lindsay Ruth Hodgkinson in Support of Motion to Strike Plaintiff's First Amended Complaint, Docket No. 33 (June 25, 2012), Exhs. A-X.

[87]*Id.*

[88]SLAPP Order at 4 ("Because defendants contend that their motion addresses the legal sufficiency of plaintiff's complaint, the court will [be] evaluating the motion using a standard analogous to that employed in deciding a Rule 12(b)(6) motion").

defendants' motion made reference to only eleven of the twenty-four exhibits.[89]   Accordingly, the court concludes that the time defendants spent compiling evidence to be submitted with their first anti-SLAPP motion was somewhat excessive under the circumstances.[90]

Mireskandari next argues that defendants' records indicate duplicative billing on the part of DWT.   As an example of duplicative billing practices, he references the fact that two

---

[89]See First SLAPP Motion at 1 (citing to Exhs. A-C, D-G, U); *id.* at 4 (citing to Exh. V); *id.* at 7 (citing to Exhs. S, Y); *id.* at 11 (citing to Exhs. P, U).

[90]Defendants contend that the number of hours their lawyers expended on the two anti-SLAPP motions was necessitated by "[Mireskandari's] own litigation decisions." (Motion at 12-13.)   They reference his ninety-page first amended complaint with 1,000 pages of exhibits, and his 171 paragraph second amended complaint, as well as multiple *ex parte* applications, in asserting that his litigation tactics warrant a full award of attorneys' fees because "a party 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response.'" (*Id.* citing *Peak-Las Positas Partners v. Bollag*, 172 Cal.App.4th 101, 114 (2009).)   The court cannot agree that Mireskandari's litigation decisions merit a full award of defendants' requested fees because those fees are only a small portion of costs they incurred throughout the litigation.   Defendants are entitled by statute to an award of reasonable attorneys' fees incurred in bringing their anti-SLAPP motions; a fee award under § 425.16(c) cannot be punitive in nature, even if plaintiff's conduct independently increased the costs of litigation.

Mireskandari likewise raises several arguments that the court finds unpersuasive.   First, he asserts defendants are attempting to recover fees for an attorneys' fees motion that "was never filed." (Opposition at 12.)   As defendants note in their reply, the fee motion referenced in the challenged billing entries is the motion that is presently pending before the court. (Reply at 15.)   Similarly unpersuasive is Mireskandari's contention that legal research related to the timing of defendants' fee motion should not be awarded. (Opposition at 12.)   As the court has noted, federal courts hearing anti-SLAPP motions are bound by federal procedural law, which requires, in most circumstances, that plaintiffs be given leave to amend their complaint if there is a possibility that they can state viable claims.   This rule extends to anti-SLAPP motions to strike.   Federal procedure differs in this regard from the manner in which California courts treat anti-SLAPP motions.   The California Court of Appeal has noted that striking a claim without prejudice undermines the legislative purpose of the anti-SLAPP statute.  See *Simmons*, 92 Cal.App.4th at 1073-74).   As a result, a defendant in state court can normally file a motion for attorneys' fees immediately following the ruling on an anti-SLAPP motion because the claims have been struck with prejudice.   In federal court, attorneys' fees motions must generally be filed within fourteen days after the entry of judgment.   Since judgment was not entered following the court's decision of the first anti-SLAPP motion because leave to amend had been granted, it was not unreasonable for defendants' counsel to research when a fee motion had to be filed.

associates, Laidman and Glasser, each spent approximately 120 hours drafting the first anti-SLAPP motion.[91]  In combination, he asserts, DWT lawyers billed more than 300 hours to preparation of the first motion.[92]  Defendants counter that "the case was managed efficiently and economically," noting that two associates with "extensive experience in media and First Amendment litigation, including litigating motions under Section 425.16," were primarily responsible for drafting the two anti-SLAPP motions and that Sager expended time revising the pleadings that were filed.[93]  Based on its experience, knowledge, and recollection of proceedings in this matter, and its experience reviewing fee applications submitted in other cases, the court agrees with Mireskandari that the hours expended on the anti-SLAPP motions, as well as the fee motion, are excessive.  Defendants' attorneys recorded 332.1 hours in connection with preparation of the first anti-SLAPP motion.  Laidman billed 120 hours and Glasser spent 119.1 hours.  Sager recorded an additional 73.5 hours reviewing and revising Laidman's and Glasser's work.  While the court agrees that it was efficient to have junior lawyers prepare a first draft of the motion, and to have a senior lawyer review that draft, The court recognizes that Mireskandari's first amended complaint pled fourteen causes of action and attached voluminous exhibits.  Nonetheless, given the arguments defendants' motion raised, and the extensive experience the defense lawyers have litigating media and First Amendment matters, as well as anti-SLAPP motions, the court concludes that billing 332 hours – or more than eight 40-hour workweeks – for the drafting and filing of a single motion and reply is excessive.

The hours billed for preparation of the second anti-SLAPP motion are also somewhat excessive, given that Mireskandari's claims significantly narrowed his claims and defendants moved to strike five causes of action as opposed to more than twice that number in their previous motion.  Defendants assert that their attorneys jointly spent 90.2 hours preparing the second motion.  Many of the arguments raised, moreover, mirrored those that had been raised in the first

[91]*Id.*; see Jampol Decl., Exh. A.

[92]Opposition at 12.

[93]Motion at 13-14.

motion.  Two associates, Jampol and Laidman, spent 17.2 hours and 31.5 hours, respectively, drafting the motion, while Sager spent 16.0 hours reviewing and revising the motion.  Given the more limited scope of the second anti-SLAPP motion, the court cannot find, based on its experience and recollection of the litigation, that the hours billed were reasonable.

Finally, DWT attorneys recorded 119 hours in connection with preparation of the fee motion and reply.  Of that time, two paraprofessionals spent approximately 34.2 hours compiling and redacting billing records; Laidman spent 34 hours drafting the motion; Jampol spent 34.7 hours drafting the motion; and Sager and Haas collectively spent 13.6 hours related to the motion and its reply.  While the court appreciates that compiling and redacting the billing records was be a time-consuming task, which was appropriately assigned to paralegals, the court finds the amount of time devoted to drafting the eighteen-page motion and twenty-page reply briefs somewhat excessive.[94]

Defendants argue, however, that the attorneys' fees they seek are reasonable because they seek recovery of only a portion of the fees to which they are entitled under the anti-SLAPP statute.  They note that "in a good-faith attempt to be reasonable and streamline their request for fees, the[y] . . . do not seek reimbursement for certain tasks relating to their SLAPP motions even though they are entitled to such."[95]  Among the tasks for which defendants do not seek to recover are:

---

[94]The billing entries for all three motions reflect that counsel spent a substantial amount of time "corresponding" and "conferring." Defense counsel communicated or conferred for 41.52 hours – more than one workweek of time.  (See Jampol Decl., Exh. A.)  While some number of interoffice communications and conferences are necessary when a firm assigns initial drafting of motions to junior lawyers, and final editing to senior lawyers – a practice the court endorsed above – assigning fewer attorneys primary responsibility for drafting a particular motion, and keeping conference time/communications to the minimum necessary to coordinate work would have lowered the total hours for which defendants seek compensation.

[95]Motion at 13.

- defendants' objections to evidence submitted by Mireskandari in opposition to the first anti-SLAPP motion;[96]

- defendants' response to Mireskandari's supplemental brief in opposition to the first anti-SLAPP motion;[97] and

- defendants' opposition to Mireskandari's *ex parte* application to file a response to defendants' evidentiary objections.[98]

Defendants are correct that they would be entitled to recover attorneys' fees incurred in connection with each of these filings.  Under the anti-SLAPP statute, as noted, a prevailing defendant is entitled to recover fees for attorney time for "all proceedings, including discovery . . . , directly related to the special motion to strike."  *Jackson*, 179 Cal.App.4th at 92. Evidentiary objections to Mireskandari's opposition to the first anti-SLAPP motion, a response to his supplemental brief in opposition to the first anti-SLAPP motion, and opposition to his *ex parte* application to file a response to defendants' evidentiary objections to Mireskandari's anti-SLAPP opposition are all directly related to defendants' first motion to strike and thus could be recovered by defendants under § 425.16(c).  Because defendants are entitled to recover such fees but do not seek them in this motion, the court concludes it is appropriate to judge the reasonableness of their requested fees in light of this fact.

Even taking this into account, given the excessive and duplicative billing practices noted by the court, the court concludes that a reduction in the requested fees is warranted.  In light of defendants' good faith efforts to recover only a portion of recoverable fees, the court concludes that a 15 percent reduction in the requested fees is appropriate.  Reducing counsel's reported

---

[96]Objections of Defendants to Plaintiff's Declarations and Exhibits re: Amended Motion to Strike Plaintiff's First Amended Complaint, Docket No. 76 (Aug. 6, 2014).

[97]Objection/ Response to Plaintiff's Improper Supplemental Brief, Docket No. 77 (Aug. 6, 2014).

[98]Opposition to *Ex Parte* Application to File a Responsive Pleading to Objections Filed by Defendants, Docket No. 86 (Aug. 17, 2014).

hours, as set forth in Jampol's declaration and supplemental declaration results in a total lodestar amount of $147,176.48.[99]

c.     **Defendants' Relative Success on Their Anti-SLAPP Motions**

Although the court has concluded that the claims on which defendants prevailed were inextricably intertwined with the claims on which they did not, "if the work on the successful and unsuccessful causes of action [is] overlapping, the court should then consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate." *Mann*, 139 Cal.App.4th at 344.  Defendants ultimately prevailed on nine of the twelve claims challenged in their first anti-SLAPP motion, and on two of the five state law claims challenged in the second motion.  Mireskandari invites the court to divide the requested attorneys' fees equally among all claims and calculate a fee award based on the number of claims on which defendants prevailed.[100]  Mireskandari's apportionment methodology is not appropriate.  It is a formulaic approach that does not adequately account for "defendant[s'] relative success . . . in achieving [their] objective."

Defendants achieved a high level of success as a result of their anti-SLAPP motions – both in terms of reducing the number of claims they must defend, and of narrowing the scope of the claims that survived.  It is true that the purpose of an award of attorneys' fees award under § 425.16(c) is not to punish the plaintiff, but reasonably to compensate defendants for the cost of litigating a successful anti-SLAPP motion in light of the success achieved.  See *Witte v. Kaufman*, 141 Cal.App.4th 1201, 1209 (2006) ("An award of sanctions is markedly different from an award of attorney fees under section 425.16.  Like a punitive damages award in civil litigation, an award of sanctions is intended to punish a party for bad faith conduct, not to compensate or reward the opposing party.  Section 425.16, subdivision (c), on the other hand, is intended to compensate the SLAPP defendant for attorney fees incurred in bringing a motion to strike, not to punish the SLAPP plaintiff").  Given the fact that defendants' anti-SLAPP motions were, by any

---

[99]

[100]Opposition at 14.

measure, extremely successful, in that they eliminated nine of the twelve claims they challenged–
the court cannot say that a reduction in the lodestar amount is required to ensure that the fee award
is not punitive.

When courts reduce the lodestar defendants, it is usually because defendants achieved
markedly less success on anti-SLAPP motions than defendants did here.  See, e.g., *Sonoma
Foods*, 2007 WL 2729422 at *2 (reducing the lodestar by fifty percent because defendants
prevailed on only two of plaintiff's nine state law claims); *Mann*, 139 Cal.App.4th at 341-47
(reducing the lodestar by fifty percent where defendants prevailed on only one of four state law
claims).

Moreover, the court has already reduced the lodestar because of DWT's billing practices;
the present discounted lodestar amount reflects the court's best estimation, based on its experience
with this and similar cases, of the reasonable value of counsel's services in light of their high level
of success.  See, e.g., *Yee Keung Siu v. Pius Lee*, No. A121108, 2008 WL 4889686, *4 (Cal.
App. Nov. 13, 2008) (Unpub. Disp.) ("Siu asserts that 'partially prevailing defendants on a
section 425.16 motion are not entitled to their full fees,' and that the trial court's failure to reduce
Lee's attorney fees to reflect the partial success of his anti-SLAPP motion was an abuse of
discretion.  Siu's contentions are unpersuasive. . . .  Siu takes issue with the fee amount decided
upon by the trial court and its method of arriving at that amount.  Indeed, Siu asserts that what
the trial court should have done is 'reduce the hours sought in [Lee's] fee motion by one half,
which would be an accurate reflection of his proportionate success [on] the special motion to strike
and on the subsequent appeal.'  Even if we agree with Siu's approach, that would not compel
reversal because we are not free to simply substitute our 'judgment for the judgment of the trial
judge.'  Rather, reversal is warranted only if the trial court's fee computation is beyond the
bounds of reason.  In this regard, it is true that despite Lee's partial success the trial court did not
reduce the 167 total attorney hours Lee claimed.  However, the trial court did reduce the hourly
fee claimed by Lee from $550 per hour to $325 per hour.  This alone reduced the lodestar amount
from $91,850 to $54,275.  Additionally, the trial court denied Lee's request for a multiplier of
two to account for the novelty and complexity of the issues and the skill and experience of his

counsel.  The fee award reflects the trial court's estimation of the extent to which Lee's motion 'changed the nature and character of the lawsuit,' in particular by eliminating the defamation causes of action directed at his right to free speech . . . and narrowing the facts of the case to those concerning the alleged publication of private facts. . . .  Accordingly, we cannot say the trial court exceeded the bounds of reason in its method of scaling down Lee's claimed fee award to arrive at an amount reflecting his partial success in his special motion to strike" (citations omitted)); see also *Henry v. Bank of America Corp.*, No. C 09-0628 RS, 2010 WL 3324890, \*5-6 (N.D. Cal. Aug. 23, 2010) (in an action where defendant prevailed on three of four claims it sought to strike in an anti-SLAPP motion, reducing attorneys' fees award based on defendants' counsel's billing practices, but not because defendants failed to prevail on all claims, and concluding the  discounted fee award "[was] commensurate with the extent to which the motion changed the nature and character of the lawsuit, and [was] reasonable based on the time spent and the hourly rate for each attorney," citing *Ketchum*, 24 Cal.4th at 1136; *Mann*, 139 Cal.App.4th at 345); *Harman v. City and County of San Francisco*, 156 Cal.App.4th 407, 425-27 (2007) ("The second step of the *Hensley* analysis focuses upon whether additional adjustments in the fee award must be made to account for the partial degree of success achieved.  'Under *Hensley*, a partially prevailing party is not necessarily entitled to all incurred fees even where the work on the successful and unsuccessful claims was overlapping.'  *Mann*, 139 Cal.App.4th at 344.  '[T]he court makes further reductions when plaintiffs' success on any remaining interrelated unsuccessful and successful claims was limited.' . . .  Here, the trial court exercised its discretion by considering an 'adjustment to the lodestar' according to the 'second step of *Hensley*' to account for the 'lack of overall success.' . . .  The court declined to make further adjustments [to the lodestar] . . . for a number of stated reasons.  First, the court took into account that the lodestar figure had already been significantly reduced . . . and determined that additional reductions for lack of success 'would amount to doubly reducing the fees.'  The court also determined that the fee award was 'not out of proportion to the overall success and significance of the litigation, and is commensurate to Plaintiff's long, hard-fought struggle for vindication of his constitutional right.' . . .  We do not find that the award at issue here reaches the level of an abuse of discretion.

1 . . .  We therefore conclude that after the adjustments made [to the lodestar], the trial court did

2 not err by failing to reduce the award to account for respondent's lack of success").

3

4         **III.  CONCLUSION**

5    For the reasons stated, the court grants in part and denies in part defendants' request for

6 attorneys' fees under California's anti-SLAPP statute, California Code of Civil Procedure

7 425.16(c).  The court awards defendants attorneys fees in the amount of $147,176.48.

8

9 DATED: November 7, 2014

10         MARGARET M. MORROW
          UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28